MANHATTAN OVERSEAS COMPANY, INC., PLAINTIFF-APPELLEE, v. CAMDEN COUNTY BEVERAGE COMPANY, DEFENDANT-APPELLANT.

Submitted· May 7, 1940—Decided September 12, 1940.

240

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the appellant, *Walter S. Keown* (*William A. Early King,* of counsel).

For the appellee, *Casselman & Boulton* (*Walter R. Carroll,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is an action at law for breach of contract. Plaintiff sued to recover the damages it sustained as a result of the alleged wrongful refusal on the part of the defendant fully to carry out its contract to purchase from plaintiff twenty-five bales of prime Polish hops, 1936 crop.

Plaintiff is a corporation of the State of New York with its principal place of business in the city of New York. It is engaged in the business of selling malt and hops.

Through the acknowledged effort of its commission broker, Peter Lust, while he was attending a convention of brewmasters in Philadelphia, plaintiff, on October 6th, 1936, received, through the mail, at its New York office, a written order from the defendant for the purchase of "twenty-five

bales of prime Polish hops, 1936 crop," f.o.b. Philadelphia docks. The price was fixed at fifty-eight cents a pound, twenty-four cents of which covered the import tax. Two of the twenty-five bales so ordered were to be shipped immediately. If the two bales so shipped were unsatisfactory, the remaining twenty-three bales were to be subject to cancellation. If satisfactory, the remaining twenty-three bales were to be shipped "at the disposal of Mr. Martin," an officer of defendant. The day after the receipt of this order (October 7th, 1936), plaintiff, in writing, notified defendant of its acceptance thereof. It was agreed that plaintiff would draw a sight draft, with bill of lading attached, for each shipment made and that defendant would, in turn, pay each draft so drawn.

In pursuance of calls finally made for shipments (some were the result of much correspondence and many conferences between the parties), plaintiff made the following deliveries: October 11th, 1936, two bales; January 13th, 1937, five bales; February 23d, 1937, six bales, and October 11th, 1937, two bales. Defendant accepted and paid for the fifteen bales so delivered—the last payment being made on March 15th, 1938. Notwithstanding the fact that under the custom of the brewing trade defendant was obliged to call for the entire shipment before October 1st, 1937, defendant refused to call for the remaining ten bales. That refusal, generally stated, was based on the claims that the hops of the last two shipments were of an inferior quality to those originally ordered and were not delivered from the same lot as the first two shipments. Defendant, therefore, took the position that it was no longer obliged either to call for the delivery of the remaining ten bales or to pay for same.

Plaintiff's claim, on the other hand, was that it had fully complied with its contractual undertaking with defendant. Plaintiff had set aside the ten bales for defendant and on June 18th, 1938, drew a sight draft on defendant for the balance of the contract price. Defendant refused to honor it, and plaintiff, thereafter, on June 29th, 1938, instituted this suit. Plaintiff abided an available market for the resale of the ten bales of hops and on its appearance in August of 1939 it sold same for export to Antwerp, Belgium, at two and one-

half cents a pound. Plaintiff then sought, as its amended complaint discloses, to recover from defendant the difference between the contract price (less the import tax) and the sale price.

The trial judge denied defendant's motions to nonsuit and to direct a verdict in its favor. On the merits of the issue involved he-properly submitted the case to the jury with a comprehensive and fair charge, free from any reversible error. The jury returned a verdict of $2,093.53 plus $77.62 costs, in favor of the plaintiff. It is the propriety of the judgment based upon that verdict that is here challenged. Seventeen grounds are set down in support of that challenge. Some are abandoned; none is meritorious and but few require discussion.

1. Defendant argues that the trial judge erred in refusing to grant its motion for a nonsuit and to direct a verdict in its favor. The argument is based upon the following grounds:

(A). Since plaintiff is a foreign corporation which concededly did not qualify to transact business in this state (*R. S.* 14:15-3), it could not maintain this action because the contract in issue was made and completed in this state. *R. S.* 14:15-4. This argument finds no support in the proofs. Assuming, without so deciding, that Peter Lust, plaintiff's broker, while attending the convention of brewmasters in Philadelphia, had the authority to make the contract for the order in issue (plaintiff's proof was that his contract for orders were subject to its approval), there is no proof that the contract was made and completed in New Jersey. The most favorable inference is that Lust obtained defendant's order in Philadelphia. When, as here, defendant's written order was signed in this state, transmitted to New York for acceptance, and there accepted by letter addressed to defendant in New Jersey, it is well settled that the contract was completed in New York and not in this state. *The Stevens-Davis Co.* v. *Peerless Service Laundry,* 112 *N. J. L.* 304, 306; 170 *Atl. Rep.* 169. There is no merit to this branch of the argument.

(B). Defendant argues that the remaining and undelivered bales were not part of the lot from which the first and

second shipments were made. Assuming that to be so, we fail to see its relevancy. Both lots unquestionably consisted of "prime Polish hops, 1936 crop." That was the kind of hops which were the subject-matter of the contract between the parties irrespective as to the particular lot from which they chanced to come. That was the kind of hops which defendant approved and that was the kind of hops with which, under the conflicting proofs, it was open to the jury to find, as it apparently did, that plaintiff supplied defendant. There is no merit to this branch of the argument.

(C). Defendant argues that the plaintiff failed to sell the ten remaining bales in the open market at the time of defendant's breach, in order to minimize the damages. This argument is based upon the claim that if defendant was obliged fully to carry out its undertaking with plaintiff before October 1st, 1937, and failed to do so, then the breach of the contract occurred on October 1st, 1937, and it became the duty of the plaintiff then to sell the hops in the open market in order properly to minimize defendant's damages. This argument begs the issue. The onus of proving that damages might have been minimized rests upon the party who was guilty of the breach of the contract. *The Stevens-Davis Co.* v. *Peerless Service Laundry, supra* (at *p.* 308). Thus, the question was: which party breached the contract?

It is conceded that defendant did not fully carry out its contractual undertaking with plaintiff. Its defense, as we have seen, was that it was not obliged, under the circumstances, to do so. It is interesting to observe that throughout the correspondence between the parties, defendant made no mention of its subsequent claim of the alleged inferiority of the quality of the last two shipments of the hops. As late as June 12ih, 1937, defendant wrote to plaintiff stating that it had "more imported hops than [it] could use for some time to come:" it asked plaintiff "not to ship any more hops" until advised and stated that it would "greatly appreciate," for the reason already stated, if plaintiff "could possibly dispose of the remaining bales on contract elsewhere." We further observe that defendant finally paid, on March 25th, 1938, for the very hops it claimed to be of inferior quality. Under

these and all other proofs, it was open to the jury to find, as it did, that defendant breached the contract.

Defendant, moreover, utterly failed to prove specifically that the available market was other than that claimed by plaintiff. There is no merit to this branch of the argument.

2. Defendant argues that the court erred in admitting evidence to explain the meaning of the words in the contract which related to shipments, namely, "at the disposal of Mr. Martin." This evidence was to the effect that since Polish hops appeared on the market about October 1st of each year, the custom of the trade was that the purchaser of such hops was obliged, under the quoted language, to call for the delivery of the same by October 1st of the following year, here October 1st, 1937. The admission of this testimony was altogether proper. It is not repugnant to the contract. It does not in anywise tend to alter or contradict the contract. It "only limits or superadds a right which is consequential" to the contract. Proof of a special usage or custom is the "key to the contract" without reference to which the intent of the parties can not be ascertained. It explains the meaning or sense attached to the words in the trade. *Steward & Metler* v. *Scudder,* 24 *N. J. L.* 96, 104, 105. *Cf. Cramer & King Co.* v. *National Surety Co.,* 103 *Id.* 83, 85; 134 *Atl. Rep.* 77.

It will be observed that the parties did not contract for delivery "at any time." *Cf. Blatt* v. *Boardwalk Securities Corp.,* 114 *N. J. L.* 477; 176 *Atl. Rep.* 688; *Edge* v. *Boardwalk Securities Corp.,* 115 *N. J. L.* 286; 179 *Atl. Rep.* 270; *Edge* v. *Pancoast,* 120 *N. J. L.* 216; 198 *Atl. Rep.* 825. Here it is plain that the words "at the disposal of Mr. Martin" were used pursuant to an established custom in the trade.

Nor is this a case where after the sale of goods and passing of title thereto, the vendor agrees to act as bailee of the goods for the vendee. *Weinstein* v. *Sheer,* 98 *N. J. L.* 511; 120 *Atl. Rep.* 679. In the instant case, we have a contract which calls for delivery by vendor to vendee in words well known by custom in the trade. Evidence of that custom merely explained rather than altered or contradicted the written terms of the contract of purchase.

3. Defendant argues that the trial judge fell into reversible error in not permitting Lust to answer the following questions, constituting grounds of appeal numbers 7 and 8, respectively: *"Q.* And, what did he [Bodine, an officer of defendant] advise you concerning those six bales?" and *"Q.* As a result of the conversation you had with Bodine, what, if anything, did you tell Manhattan Overseas Company [the plaintiff] as to the disposition of the hops?" For plaintiff an objection was made to each question, with no ground stated; each objection was sustained by the trial judge; and for defendant an exception was taken to each ruling. Were the rulings proper? We think so.

It will be observed that nothing appears in either question to indicate that what Bodine advised Lust as to the disposition of the six bales, or that what, if anything, Lust told plaintiff as the result of Bodine's advice, necessarily related to defendant's claim of the alleged inferior quality of the hops. It may well have related to any one of the many other circumstances in the case, such as shipment, payment, &c. Notwithstanding the conjectural nature of the questions, nothing was said to the court as to what defendant proposed to prove by the questions propounded. In the circumstances, it was the clear duty of counsel to state to the trial judge just what he proposed to prove by the questions. Having failed to do so, his exceptions to the judge's rulings are inefficacious. For, "without offer and purpose for which evidence is offered appearing, it is not error to exclude answers to questions propounded, as the answers to the question are conjectural and the court is neither obliged nor required to indulge in guess work." *Toscani* v. *Quackenbusch Co.* (*Supreme Court*), 112 *N. J. L.* 173, 175, 176, 177; 170 *Atl. Rep.* 212, 213, 214; *Fielder* v. *Friedman* (*Court of Errors and Appeals*), 124 *N. J. L.* 514, 517; 12 *Atl. Rep.* (*2d*) 897, 898.

We have carefully considered all other grounds of appeal (they relate to the admission and exclusion of evidence and to the charge by the trial judge), and find them to be without merit.

Judgment is affirmed, with costs.