167 N.J. Super. 376 (1979)
400 A.2d 883
FLAVORLAND INDUSTRIES, INC., PLAINTIFF,
v.
SCHNOLL PACKING CORPORATION, DEFENDANT.
Superior Court of New Jersey, District Court, Essex County.
March 15, 1979.
*379 Mr. James M. Newman for plaintiff (Messrs. Heitner, Rosenfeld, Reilly, Goldzweig & Grossman, attorneys).
Mr. Edward R. Longo for defendant (Messrs. Benenson & Seher, P.A., attorneys).
ALBANO, P.J.D.C.
The issue, in this Uniform Commercial Code matter, is the right to "cover" under N.J.S.A. 12A:2-711 (1)(a) and N.J.S.A. 12A:2-712.
In its complaint plaintiff (hereinafter the seller) alleged that defendant (hereinafter the buyer) owed it $2,438.61, the fair value of certain goods contracted for. In its answer the buyer set up a counterclaim of set-off in the same amount. This set-off arose from the failure of the seller to deliver certain other goods, the subject of a separate contract between the parties, by date certain. When the matter came on for trial both parties stipulated that the seller had a prima facie cause of action and then proceeded to try the counterclaim of set-off.
From the testimony of the parties and the exhibits introduced into evidence the following facts evolve. The Seller and the buyer, through an agent or broker, P & P Trading Co. Inc., entered into a contract for the sale and purchase of one load of goose necks (another name for a bottom round cut of beef) at a stated price, to arrive at an agreed destination *380 on October 6, 1977 or October 7, 1977, at 8 P.M. The confirmation of the order, dated September 28, 1977, was entered into evidence as Exhibit D-1. It reflects plaintiff as seller, defendant as buyer, and Wakefern Foods, 600 York Street, Elizabeth, N.J., as the place for delivery. On October 3, 1977 the seller realized it had a problem, because of a lack of production capability, with the contract for goose necks. It then knew that it could not fulfill the contract by making delivery on time and, in fact, it never did make the delivery agreed upon. Telephone calls between the parties and with the broker followed. The seller was not able to work anything out because the buyer would not accept a late load. After advising the seller, and before the date for delivery, the buyer went into the market, and its cost to "cover" the order contracted for was higher by $2,438.61. The seller offered no testimony to controvert the reasonableness of the cost of "cover," but wanted to show, as defenses, custom and usage in the trade and prior practices between the parties. After trial testimony comprehensive memoranda were submitted by both parties, each setting forth those portions of the Uniform Commercial Code which it felt to be applicable.
Exhibit D-1, the confirmation of the agreement between the parties, is complete on its face, represents a final written expression of the terms of the contract and, as such, is controlled by N.J.S.A. 12A:2-202, "Final Written Expression; Parol or Extrinsic Evidence." Its terms may not be contradicted by any evidence of a prior agreement or of a contemporaneous oral agreement, but its terms may be explained or supplemented by course of dealing or usage of trade (N.J.S.A. 12A:1-205) or by course of performance (N.J.S.A. 12A:2-208). The seller made no effort to show contradiction by prior agreement or contemporaneous oral agreement, but did want to introduce testimony of usage of trade or course of performance to permit an interpretation of the delivery date, thereby enlarging the time for delivery beyond that set forth in Exhibit D-1. N.J.S.A. 12A:1-205, "Course of Dealing and Usage of Trade," is not available *381 to plaintiff. First, subsection (6) of the statute states that evidence of a relevant usage of trade is not admissible unless such notice has been given as will prevent unfair surprise. There was no suggestion that the seller had given the buyer any notice of its intention to rely on usage of trade to interpret Exhibit D-1. Second, subsection (4) of the statute requires that the express terms of an agreement and an applicable usage of trade be construed wherever reasonable as consistent with each other, but when such construction is unreasonable, express terms control usage of trade. Here, the term of Exhibit D-1, as to delivery, is an express term, and any evidence of usage of trade which would enlarge that term would be inconsistent and unreasonable. The express term for delivery must control. Course of dealing is not available to the seller either, since the testimony regarding prior transactions between the parties clearly showed that earlier deliveries had been made timely.
N.J.S.A. 12A:2-208, "Course of Performance or Practical Construction," cannot aid the seller. This statute covers a contract of sale involving repeated occasions for performance. Here, there were no repeated occasions for performance, but only one occasion, delivery by October 6, 1977 or October 7, 1977 at 8 P.M.
Further, Exhibit D-1 is a complete instrument. The parties, at the time of its making, agreed that performance would be delivery by October 6, 1977 or October 7, 1977 at 8 P.M. Parol evidence may not be admitted to vary or to contradict the term agreed upon for delivery and the term is so clear as to require no additional interpretation. Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953). The only safe criterion of the completeness of a written contract as a full expression of the terms of the parties' agreement is the instrument itself. If it purports to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be supplied by extrinsic evidence, parol evidence to vary or add to its terms is not admissible. Schlossman's, Inc. v. Radcliffe, 3 N.J. 430, *382 434 (1950). As in the case of other contracts, the intention of the parties as revealed by the language employed to express it, considered in relation to the subject matter and the surrounding circumstances, must be effectuated. Lott v. Delmar, 2 N.J. 229, 232 (1949). There is no question that both parties intended delivery to be made by October 6, 1977 or October 7, 1977 at 8 P.M.
The seller, in defense of the counterclaim, also urged the application of N.J.S.A. 12A:2-309, "Absence of Specific Time Provisions; Notice of Termination," to show that its notice of October 3, 1977, that it could not perform the contract by making delivery by October 6, 1977 or October 7, 1977 at 8 P.M., was reasonable notification of termination. This statute covers those situations where time for delivery has not been agreed upon and establishes a reasonable time; or covers successive performances; or permits termination of a going contract relationship on reasonable notification unless the result would be unconscionable. None of these is of any assistance to plaintiff. The time for delivery was agreed upon; Exhibit D-1 provided for a single performance rather than successive performances, and it would be unconscionable to permit the seller to terminate the contract at an uncontroverted cost of $2,438.61 to the buyer.
Lastly, the seller claimed that its notice of October 3, 1977, that it could not deliver by October 6, 1977 or October 7, 1977 at 8 P.M., was given in reasonable time under N.J.S.A. 12A:1-204, "Time; Reasonable Time; `Seasonably.'" But this argument presupposes that seller had a right to terminate, and a reasonable time in which to do so. In fact, the seller was not entitled to terminate with impunity, and therefore the question of reasonableness of notification is irrelevant.
On the other hand, for its counterclaim the buyer asserted N.J.S.A. 12A:2-610, "Anticipatory Repudiation." Since the seller informed the buyer that the goose necks could not be delivered by the agreed date of October 6, 1977 or October 7, 1977 at 8 P.M., and the buyer advised seller that *383 this was a breach entitling the buyer to procure goose necks on the open market, the buyer now resorts to its remedy for the breach.
Either party to a contract, wholly or partially executory on the part of the other party, always has the right to stop performance by the other party subject to that party's right to damages. Repudiating a contract to sell goods or countermanding performance does not rescind the contract, but constitutes a breach of it. Bixler v. Finkle, 85 N.J. Law 77, 78 (Sup. Ct. 1913).
The seller breached the contract and the buyer is entitled to remedies provided in N.J.S.A. 12A:2-711, "Buyer's Remedies in General; Buyer's Security Interest in Rejected Goods." Among the remedies open to buyer is that set forth in N.J.S.A. 12A:2-712, "`Cover'"; Buyer's Procurement of Substitute Goods." Under this part of the Code, after a breach the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of goods in substitution for those due from the seller, and the buyer may recover from the seller as damages the difference between the cost of "cover" and the contract price. Here, the buyer "covered" promptly, its good faith and the reasonableness of its cost were not questioned. The buyer has satisfied the foregoing statutory conditions and is entitled to judgment.
Normally, the measure of damages where a seller breaches a contract for the sale and delivery of merchandise is the difference between the contract price and the market or current price. Rich v. Bongiovanni, 4 N.J. Super. 243, 247 (App. Div. 1949). The difference here of $2,438.61 has not been controverted. Therefore, judgment will be entered for defendant and against plaintiff dismissing the complaint, and for defendant and against plaintiff on the counterclaim in the sum of $2,438.61, with interest and costs.