**In re DSC INDUSTRIES, INC.**

**DSC INDUSTRIES, INC.**

**v.**

**ROBERT SAGOT, INC.**

No. 87–7833.

United States District Court, E.D. Pennsylvania.

June 23, 1988.

Edward Cohen, Philadelphia, Pa., for plaintiff/appellee.

Kent Cprek, Sagot and Jennings, Philadelphia, Pa., for defendant/appellant.

## MEMORANDUM

NEWCOMER, District Judge.

### I. *Introduction.*

This is an appeal from an adversary proceeding in the United States Bankruptcy Court. In early 1986, Camden County, New Jersey, (hereafter "Camden County" or "owner") desired to construct a prison. The appellee, DSC Industries (hereafter "DSC" or "Subcontractor"), was a subcontractor who agreed to provide cafeteria tables as part of the contract to build the prison. The appellant Robert Sagot, Inc. (hereafter "Sagot" or "Contractor") was the general contractor on the project. DSC filed a contract action as a debtor-in-possession against Sagot for amounts which DSC charged for alternations from its initial undertaking. Sagot now appeals the decision below which awarded DSC damages on the contract. 79 B.R. 244 (Bkrtcy.E.D.Pa. 1987).

The Bankruptcy Court ruled in favor of DSC based on its determination that the alterations at issue were reasonably communicated to, and implicitly accepted by, Sagot. The Bankruptcy Court also noted in its opinion that (1) the alterations were caused by circumstances beyond the control of DSC and (2) due to a lack of privity between DSC and Camden County, it would be unlikely that there could be recovery from anyone but Sagot.

At issue on appeal is whether the Bankruptcy Court properly applied New Jersey contracts law. While this court concludes that the Bankruptcy Court's findings of fact were supported by the record, it also appears that the court below did not properly apply New Jersey law to the case before it.

### II. *Standard of Review.*

Under Bankruptcy Rule 8013, the District Court, in reviewing a decision of the Bankruptcy Court, may affirm, modify, reverse or remand with instruction for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, with appropriate consideration given to the Bankruptcy Court's opportunity to judge the credibility of the witnesses. *In re Waldick Aero–Space Devices, Inc.,* 71 B.R. 932 (D.N.J.1987). The reviewing court has plenary review of questions of law. *In re United Home Loans, Inc.,* 71 B.R. 885 (W.D.Wash.1987); *Prudential Ins. Co. of America v. Colony Square,* 29 B.R. 432 (W.D.Pa.1983), *appeal dismissed,* 725 F.2d 669 (3d Cir.1983); *see D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984); *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 103 (3d Cir.1981).

### III. *Facts*

As noted above, this court, as an appellate court, may set aside factual determinations of the lower court only if such determinations are clearly erroneous. In this case, no clear error exists in the findings of facts. The decision below provides well-reasoned findings which are supported by the record. Since many of the findings of fact were necessarily based upon conflicting testimony, I am even more cautious in reviewing the factual determinations. The court below stated which witnesses were most credible and reliable and provided the rationale to support these findings. For the purposes of this appeal, the relevant facts are as follows.

In 1986, Camden County initiated plans to construct a new correctional facility. DSC, submitted or bid to Sagot, who had submitted a general bid for the furnishings to be installed in the prison. DSC's bid was for 105 cafeteria tables. Both DSC and Sagot were successful in their bids.

There was no formal written contract between the Contractor and Subcontractor. However, the Subcontractor memorialized the oral agreement with a Quotation on February 19, 1986, which was completely consistant with a subsequent purchase order composed by the Contractor.

A condition of the agreement, also not in writing, was that the Camden County could test a sample table to determine if it could be detached from the floor by inmates and used as a weapon within a certain time frame. This condition was not reduced to writing. On May 30, 1986, the initial sample table produced by the Subcontractor failed this test. On June 26, 1986, the Subcontractor forwarded a change order to the Contractor which anticipated a modification in the floor anchors to correct the problems. These modifications would cost $2,650.00 above the original contract price. In July, 1986, a test on the new sample table resulted in the same failure. The previous change order was cancelled.

After this failure, representatives of the Contractor and Subcontractor agreed on specific changes to satisfy the specifications. On October 22, 1986, the Camden County and the Contractor agreed to these same changes at an additional cost of $4,200.00 to the Camden County. There is no evidence that this agreement was ever communicated to the Subcontractor.

On December 16, 1986, the Subcontractor sent a change order to the Contractor proposing the changes necessary to pass the test. This change order stated that the additional cost above the original contract price would be $12,760.00. Although the Contractor denied receipt of the change order, the Bankruptcy Court concluded as a matter of law that the Contractor's receipt of the change order could be presumed. I believe that this conclusion was correct. *See* Discussion, *infra.*

The December 16, 1986, change order was not approved in writing by the Contractor. The substance of the change order may have been discussed by representatives of the Contractor and Subcontractor. The Subcontractor proceeded with production of the tables under the assumption that the change order had been approved.

The Subcontractor forwarded a bill to the Contractor for a total equalling $12,760.00 above the original contract price. The Contractor paid the original contract price plus $4,200.00. This latter amount represents the additional cost agreed to by Camden County and the Contractor on October 23, 1986. The action below focused on the Subcontractor's claim for an additional claim by the Subcontractor for the approximately $8,000.00 left unpaid on the December 16, 1988, change order.

IV. *Discussion.*

Although I determine that the Bankruptcy Court's findings of fact are not clearly erroneous, I am not able to affirm all of the conclusions of law. What follows is an analysis of each conclusion of law made by the Bankruptcy Court below.

1. Bankruptcy Court's Jurisdiction

The conflict between the parties focuses on the accounts receivable of the debtor-in-possession in a Chapter 11 bankruptcy proceeding. In addition, the parties did not dispute the jurisdiction of the Bankruptcy Court to address the conflict. The Bankruptcy Court was correct in determining it had jurisdiction over this matter. *In re Wicaco Machine Co.,* 60 B.R. 415 (E.D.Pa. 1986); *accord In re A.I.A. Industries, Inc.,* 75 B.R. 1013, 1017 (Bkrtcy.E.D.Pa.1987).

2. Choice of Law Issue

Sagot is a New Jersey corporation and the contract was performed, in its entirety, in New Jersey. The court below was also correct in determining that the contract at issue was governed by the substantive law of New Jersey. *See Neville Chemical Corp. v. Union Carbide Corp.,* 422 F.2d 1205, 1211 (3rd Cir.1970) (applying Pennsylvania law since Pennsylvania was the state where the contract was negotiated, plaintiff signed the contract, plaintiff has its principal place of business, and the contract was partially performed); *West Corp. v. Diversified Brokerage Agencies, Inc.,* Civ. No. 86–1451, slip op. at 6–12 [available

on WESTLAW, 1986 WL 13031] (E.D.Pa. November 17, 1986). In addition, neither party has contested the applicability of New Jersey law.

I note here that there is a difference between determining that New Jersey law is applicable and correctly applying that law. While the Bankruptcy Court was correct with respect to the former, I believe that it was in error with respect to the latter.

### 3. A Subcontractor's Right to Proceed Against the General Contractor and Owner

The court below concluded that (1) there was no possibility of an action in *quantum meruit* against Camden County by the DSC and (2) DSC could pursue its cause of action against Sagot. 79 B.R. at 248 (Conclusion of Law 3).

Sagot—in its unfocused brief filled with conclusory statements—contests these two rulings. *See* Appellant's Brief at pp. 16–7. Sagot argues that DSC cannot proceed against Sagot on the basis of *quantum meruit*, but that DSC may proceed against Camden County in *quantum meruit.* DSC's brief—containing only conclusory statements and no analysis of the applicable case law—offers meek opposition to Sagot's appeal. This court's resolution of this appeal is not driven by either party's advocacy but, rather, by a straightforward review of the record.

As noted by the Bankruptcy Court in Conclusion of Law 2, this dispute only implicates New Jersey law. The law of other jurisdictions is not germane to this action; New Jersey law controls here.

In determining that DSC could not proceed against Camden County on a *quantum meruit* theory the Bankruptcy Court stated that, "the *majority* of cases do not even allow a *quantum meruit* claim to be asserted directly against an owner by a subcontractor ..." 79 B.R. at 248 (emphasis added). The court cited no New Jersey case or statute to support this proposition.

Also, the court below concluded that DSC could proceed against Sagot. The court similarly did not set forth its rationale to support this conclusion. A fair reading of Conclusion of Law number 3 leads this court to conclude that the Bankruptcy Court simply did not apply New Jersey law to the issue of which party—either Sagot or Camden County—DSC could proceed against. Accordingly, Conclusion of Law number 3 is vacated and the issue of which party DSC may proceed against, if any, shall be remanded for addditional factual and legal determinations by the Bankruptcy Court in the first instance.

I have provided the following comments in the hope that they may provide some guidance on remand. Where no express contract exists,[1] the acceptance of valuable services performed under circumstances which would justify the conclusion that it would be inequitable to allow the recipient to enjoy the benefit without providing any compensation would support a claim based on *quantum meruit,* quasi-contract, constructive trust, or implied contract. *Kozlowski v. Kozlowski,* 164 N.J.Super. 162, 395 A.2d 913 (1978), *aff'd,* 80 N.J. 378, 403 A.2d 902 (1979); *Suburban Transfer Serv. v. Beech Holdings,* 716 F.2d 220, 226–27 (3d Cir.1983); *Berger Cty. Sewer Auth. v. Bergenfield,* 142 N.J.Super. 438, 454–56, 361 A.2d 621, 629–31 (1976). Under New Jersey law, there can be no recovery by the plaintiff who proceeds under a quasi-contract theory for the defendant's acceptance of a benefit which did not enrich the defendant beyond its contractual right. *Van Orman v. American Ins. Co.,* 680 F.2d 301 (3d Cir.1982).

### 4. Presumption that, Once Mailed, the Change Order Was Received by the Contractor

The evidence shows that the Subcontractor mailed the December 16, 1986, Change Order to the Contractor. Upon this factual conclusion, a court applying New Jersey law may presume that the contractor re-

---

1. *Compare Buckley & Co., Inc. v. State,* 140 N.J.Super. 289, 356 A.2d 56 (1975); *Ell–Dorer Construction Co. v. State,* 197 N.J.Super. 175, 484 A.2d 356 (1984) (both cases involved express contracts).

ceived it as a matter of law. *Waite v. Doe,* 204 N.J.Super. 632, 636, 499 A.2d 1038, 1040 (1985), *cert. denied,* 102 N.J. 398, 508 A.2d 256 (1986); *In re Callahan Motors, Inc.,* 538 F.2d 76, 79 n. 13 (3d Cir.1976) (applying New Jersey law), *cert. denied sub nom. Sterns v. Princeton Bank & Trust Co.,* 429 U.S. 987, 50 L.Ed.2d 598, 97 S.Ct. 507 (1976); *National State Bank of Newark v. Terminal Construction Co.,* 217 F.Supp. 341, 355–56 (D.N.J.1963) (applying New Jersey law), *aff'd,* 328 F.2d 315 (3d Cir.1964) (per curiam). Accordingly, the Bankruptcy Court's Conclusion of Law number 4 was correct and is affirmed.

### 5. Subcontractor Did Not Violate Control Specifications as Provided

This is not a legal conclusion but one of fact. As with other findings of fact made by the court below, I determine that this finding is not clearly erroneous.

### 6. The Contractor Implicitly Waived the Requirement that Changes to the Contract be Approved in Writing

The Bankruptcy Court's opinion states:

Even where a contract specifically provides that a written change order from the general contractor is a prerequisite to allow compensation for additional charges to the subcontractor, this condition is waived if the general contractor, *by its conduct,* allows the subcontractor to proceed under a reasonable assumption that it will be fully compensated for the changes.

79 B.R. at 248–49 (emphasis added). Thus, the Bankruptcy Court determined that even though the Contractor never gave its express consent, either orally or in writing, to the additional changes, the Contractor's approval could be implied from its conduct. The Bankruptcy Court cited three federal court decisions which applied the substantive contracts law of Pennsylvania, New York, and Nevada to support its conclusion regarding waiver of the writing requirement. *Id.* at 249. None of the cases represented an application of New Jersey law; nonetheless, as discussed above, it is New Jersey substantive law which is relevant to this case. Since the Bankruptcy Court did not make any finding of fact concerning the industry custom and did not analyze the waiver issue in accordance with New Jersey law, I determine that it is appropriate to vacate Conclusion of Law and remand for further proceedings. My reasoning follows.

The Subcontractor and Contractor had no written contract to govern their agreement. The express contract upon which the underlying agreement is based was oral. This oral agreement did not address how modifications to the agreement, always a possibility in construction contracts, were to be faciliated. Sagot argues that the universal custom of the industry requires that modifications must receive approval in writing. In addressing Sagot's argument that industry custom requires a written approval, the court below stated:

The defendant's allegation of a "practice in the industry" that the change order must be signed by the general contractor before it is effective carries far less weight than the written contractual provision which was present in the contracts in issue in [the Nevada, New York, and Pennsylvania cases referred to above and which] the courts, in each of those cases, allowed compensation for changes to the subcontractor.

79 B.R. at 249.

Since, the court below did not refer to any New Jersey cases or statutes, an examination of New Jersey contracts law is necessary to determine if and how such requirement can be waived. I address the industry custom issue first.

If the express terms of a contract do not address central issues in a contract, then testimony addressing the industry customs is appropriate so as to determine the intent of the parties. *Manhattan Overseas Co., Inc. v. Camden County Beverage Co.,* 125 N.J.L. 239, 244, 15 A.2d 217, 219 (Supreme Ct.1940); *Beachcomber Coins, Inc. v. Boskett,* 166 N.J.Super. 442, 447, 400 A.2d 78, 80 (1979). Since the parties in this case did not have an express agreement as to the method by which modifications were to

be approved, New Jersey common law holds that industry custom can be implied in the contract.

Common law is not the only authority here. New Jersey Statutes, Article 12A, (the New Jersey Uniform Commercial Code) § 1–205(2) provides:

> A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage *are to be proved as facts.* If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is one for the court.

N.J.S.A. 12A:1–205(2) (1962 and Supp.1987) (emphasis added); *see also* N.J.S.A. 12A:1–205(6) and Comments; *Flavorland Industries, Inc., v. Schnoll Packing Corp.,* 167 N.J.Super. 376, 380–82, 400 A.2d 883, 885 (Dist.Ct.1979). Hence, the question of custom, in that it may imply a requirement that approval for proposed modifications be in writing, is of import to the determination of this case.

Although the court below heard testimony that written approval was an industry custom, it made no findings of fact with respect to this crucial issue. *See* 79 B.R. 246–47. In conclusion of law number 6 the court stated:

> The defendant's *allegation* of a "practice in industry" that the change order must be signed by the general contractor before it is effective....

79 B.R. at 249 (emphasis added). The court's use of the term "allegation" shows that it made no determination on this point. Since this point is now crucial to the interpretation of the contract, the custom of the industry will need to be determined by the factfinder on remand.

I will now address the issue of whether the "written consent" requirement may be waived. Assuming, arguendo, that written consent is an implied term of the contract, the determination as to how and if it can be waived in New Jersey is of import. As shown in the excerpt, *supra* at p. 46, the court below determined that the waiver of such a requirement can be implied by the conduct of the parties. The court concluded that because the Contractor received notice of the additional charges and failed to act in any way to indicate the charges were unacceptable there was both an implied waiver of the written consent requirement and an implied acceptance of the charges. As this case will be remanded for a determination concerning the existence of an industry practice, I believe that a brief review of New Jersey's substantive law regarding contractual modification may be beneficial.

Throughout the history of this country, disputes between contractors and owners or subcontractors and contractors with respect to extra work and changes on contracts have provided a fertile source of litigation. New Jersey courts have long recognized that parties may orally agree to waive the requirement that a contractual modification be approved in writing. *Headley v. Cavileer,* 82 N.J.L. 635, 82 A. 908, 910 (1912) ("[p]arties who have contracted together have a right to cancel their contract, or alter it in any way not prohibited by law, or to supplement it by another and additional contract, and, in cases of this kind, may do so orally in the absence of any statute requiring such contracts to be in writing."); *accord Denoth v. Carter,* 85 N.J.L. 95, 88 A. 835 (1913).

The law regarding the implied waiver of a requirement that contractual modifications be in writing is less clear. In 1940 the New Jersey Supreme Court stated:

> When a building contract provides in substance that no additions or alteration made during the progress of the work shall be regarded as extra work unless agreed to in writing and signed by the parties before such work is begun, the mere performance of extra work without such written agreement will not give rise to an implied waiver of the provisions of the contract in that respect.

*Guizzette v. Katrek,* 124 N.J.L. 461, 462, 12 A.2d 239, 240 (1940) (citing to *Headley,* 82 N.J.L. 635, 82 A. 908). It is not readily apparent to this court that *Headley* directly

48

supports the above-excerpted statement. Moreover, twenty-one years later, the Supreme Court in *Home Owners Construction Co. v. Borough of Glen Rock*, 34 N.J. 305, 316–17, 169 A.2d 129, 135 (1961), expressly limited *Guizzette*. *Home Owners* concerned a contractor's claim against the borough for extra labor and materials furnished in the construction of a roadbed. Among other questions, the court considered the question of whether the absence of written orders relating to the extra services necessarily precluded recovery. 34 N.J. at 316, 169 A.2d at 134–35. A unanimous court stated:

> Although in *Guizzette v. Katrek*, ... Justice Case noted that the mere performance of extra work does not give rise to the waiver of a construction contract provision requiring that the authority for the extra work be in writing, he did not in any wise question that the writing requirement may be expressly or *impliedly waived* by the clear conduct or agreement of the parties or their duly authorized representatives. *See Headley v. Cavileer*, ... *Fortunato v. Cicalese*, .....

34 N.J. at 316, 169 A.2d at 135 (citations omitted and emphasis added). Thus, it appears that under New Jersey common law a party's unequivocal conduct may be viewed as an implicit waiver of a contractual requirement that changes be made in writing.

Some additional support for this conclusion may be found in *In re Fleetwood Motel Corp.*, 335 F.2d 863 (3d Cir.1964). That decision concerned an appeal from a reorganization proceeding and focused on the issue of whether or not a mechanics' lien was binding on a landowner. The panel, apparently relying on New Jersey law, stated that "the record makes it manifest that the parties waived literal compliance with that portion [of the contract] requiring a signed order from the owner or architect authorizing additional work." *Id.* at 867. That statement, however, rested on the consideration that the contract at issue provided for extras and Fleetwood had authorized the extras.

Accordingly, since the Bankruptcy Court failed to take into account the possibility of a relevant industry custom and did not analyze the waiver issue pursuant to New Jersey law, Conclusion of Law number 6 shall be vacated.

## V. *Conclusion.*

I will affirm the findings of fact made by the Bankruptcy Court. I will vacate Conclusion of Law 3, 6, and 7 made by the Bankruptcy Court and remand this case for further proceedings consistent with this opinion. On remand, the Bankruptcy Court shall determine (1) whether D.S.C. may proceed against Sagot or Camden County and, if so, (2) whether the industry custom for these contracts would imply a requirement that any alterations to the original contract be approved by written consent; and (3) whether or not such a requirement was modified or waived in accordance with New Jersey law.