**In the Matter of SUMMIT AIRLINES, INC.**

**Civ. A. No. 89–0714.**

United States District Court, E.D. Pennsylvania.

June 26, 1989.

Allen Dubroff, Philadelphia, Pa., for Summit Airlines, Inc.

Marjorie McMahon, Philadelphia, Pa., for Extra Exec. Luftverkehrsegesellschaft.

Michael Temin, Philadelphia, Pa., for Chrysler Corp.

Mary Walrath, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Committee of Summit Airlines, Inc.

## MEMORANDUM

NEWCOMER, District Judge.

This is an appeal from an adversary proceeding in United Stated Bankruptcy Court. Appellant is the Committee of Unsecured Creditors ("Creditors Committee") of the Chapter 11 debtor. Appellee is a West German corporation, Extra Executive Transport Luftverkehrsgesellschaft, mbH ("Extra").

The appellee filed a Motion for Reclamation pursuant to § 554 of the Bankruptcy Code seeking to turnover $177,829 from the proceeds of a sale of aircraft belonging to the debtor. Following a November 2, 1988 hearing, the Bankruptcy Court granted Extra's motion. The Creditor's Committee filed the instant appeal from that order. For the rationale which follows I will affirm the lower court decision.

## I. Standard of Review.

Pursuant to Bankruptcy Rule 8013, the District Court in reviewing a decision of the Bankruptcy Court, may affirm, modify, reverse or remand with instructions for further proceedings. Factual findings shall not be set aside unless clearly erroneous with appropriate consideration given to the Bankruptcy Court's opportunity to judge the credibility of witnesses. *In re DSC Industries, Inc.*, 94 B.R. 42, 44 (E.D. Pa.1988); *In re Waldick Aero–Space Devices, Inc.*, 71 B.R. 932 (D.N.J.1987). The reviewing court has plenary review of questions of law. *D.P. Enterprises v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984); *In re DSC Industries, Inc.*, 94 B.R. at 44.

## II. Background Facts.

In January, 1988, the Summit Airlines, Inc. ("Summit") entered into an aircraft purchase agreement (the "Purchase Agreement") with Extra whereby the debtor was to sell four Convair 50 Aircraft (the "Aircraft") to Extra for $6,000,000. Appellant's R–7: Exhibit E–21. Pursuant to the terms of the Purchase Agreement, Extra wire transferred $499,991.50 on January 11, 1988 to counsel for debtor, Robinson and Cole. Appellant's R–7: Exhibit E–5. Summit's counsel deposited the funds into an account entitled "Robinson and Cole Exc/Agt for Summit Airlines and Extra Airlines" (the "Account"). Appellant's R–7: Exhibit E–2, E–4 and E–5. The purpose of the Account was to provide needed repairs on the airplanes before they would be purchased pursuant to the Purchase Agreement. The tax identification number on the Account was that of the debtor, although Extra, as a West German Corporation did not have a tax identification number. Appellant's R–7: Exhibit E–2; R–11.

On February 10, 1988, counsel for the debtor disbursed $75,000 from the Account to Hayes International, an airplane repair company ("Hayes"). Appellant's R–7: Exhibit E–2. Counsel for the debtor disbursed $27,798 from the Account directly to the debtor on March 7. *Id.* On March 9 $75,000 was transferred from the Account to Hayes. On March 31 counsel for the debtor disbursed $20,000 from the Account to the debtor. As of October 15, 1988, there remained a balance in the Account of $318,188.89. Appellant's R–7: Exhibit E–4.

On March 18, 1988, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against the debtor. The Bankruptcy Court entered an Order on May 9, 1988, converting this case to a case pursuant to Chapter 11 of the Bankruptcy Code. Upon debtor's motion, the Bankruptcy Court entered an Order on July 7 authorizing the rejection of the Purchase Agreement with Extra pursuant to Code § 365(d)(1). Subsequently, on July 8, after bidding in open court, the Bankruptcy Court entered an Order authorizing the sale of the aircraft to a third party for $6,600,000. Appellant's R–13.

On September 20 Extra filed its motion which sought a distribution of $177,829 from the Aircraft sale proceeds. This amount represents the total amount of transfers from the Account. Appellant's R–4. The Creditors Committee in turn filed a cross-motion for an accounting and turnover of the funds remaining in the Account. Appellant's R–5.

### III. Discussion.

The Bankruptcy Court held that the monies in and traceable to the Account were not the property of the debtor's estate pursuant to Code § 541(a)(1). *In re Summit Airlines, Inc.*, 94 B.R. 367, 368 (Bankr.E.D. Pa., 1988). Specifically the Court found that the funds taken from the Account and paid to Hayes to make repairs to the Aircraft prior to debtor's rejection of the Purchase Agreement were sufficiently traced so as "to negate any equitable interest of the Debtor's estate in those funds." At 368. The Court determined that the funds

withdrawn from the Account and distributed directly to Summit for legal services are not traceable. At 368.

### A. *Rights to the Account.*

The Court below concluded that the Debtor had only "bare legal title" to the Account, citing *Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257 (1st Cir.1963), and *Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority*, 72 B.R. 619 (E.D.Pa.1985), *aff'd* 800 F.2d 1132 (3d Cir.1986). In both of these cases the Court had determined that funds which had been distributed into escrow accounts were not properly the property of the estate of the debtors.

In *Creative Data Forms*, faced with a similar situation where a third party had deposited funds into a escrow account which the bankruptcy estate was claiming, I stated:

> Section 541(a) is not intended to expand a debtor' rights against others beyond the bounds in existence at the commencement of the case. The debtor-in-possession, sitting as the trustee in a Chapter 11 case, can assert no greater rights than the debtor himself on the date the case was begun.

72 B.R. at 623. Such an expansion of the debtor's rights is exactly what the creditors committee is attempting to do through this action.

The Bankruptcy Court correctly noted that any presumption in favor of the proposition that the Account was the property of the debtor had been rebutted by the uncontroverted evidence that the funds had been deposited by Extra. At 370–371. The Court concluded under the standard that, regardless of the name on the Account, that if Extra deposited the funds into the Account for the purpose of repairing the Aircraft for its own benefit that the funds were not the equitable property of the estate. This is entirely consistent with the holding *Creative Data Forms. See also In re TM Carlton House Partners, Ltd. v. Career Planners, Inc.*, 93 B.R. 859, 865–867 (Bankr.E.D.Pa.1988).

The two signatories to the Purchase Agreement both testified that the escrow account was created pursuant to that agreement. There was additional uncontroverted testimony by several witnesses that Extra deposited the funds into the Account. Appellee's R–11A, 19A, 20A, 33A. Several witnesses also testified that the Account was created to make funds available to Hayes which insisted on prepayment for the pairs because of Summit's weak financial condition. Appellee's R–146A; 20A. Specifically, counsel for Summit testified that "[s]ince Summit did not have the money, this [Account] was the method devised to pay" the deposits required by Hayes. Appellee's R–146A

Appellant attempts to inflate the importance of facts such as the tax identification number on the Account. By employing such isolated factors appellant then attempts to compare and contrast this factual scenario against those set forth in prior cases. However, nothing in the in appellant's argument dispels the conclusion that the funds were placed into the Account by Extra for the purpose of making repairs to the Aircraft prior to the agreed upon purchase. Appellant does not, and surely cannot, argue that Extra was making a gift to Summit. The equitable powers of the Bankruptcy Court, pursuant to Code § 105, clearly support the lower court's determination to release this money to its proper owners.

The facts before the bankruptcy court overwhelmingly support the finding that the Account was the property of Extra. I am unable to conclude that the court below, in its superior position to evaluate witness credibility[1], made clearly erroneous findings of fact. Moreover the conclusion of law that the funds belonging to Extra must be returned to the Debtor is not error.

B. *Funds Distributed for Aircraft Repair.*

Any funds that had been distributed from the Account for the purpose of repair-

ing the Aircraft could only be recovered by Extra if the funds were "traceable". *See Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C.Cir.1987); *Gulf Petroleum*, 316 F.2d at 261–62. The Bankruptcy Court correctly stated that standard to be applied for the tracing of these funds was the "reasonable tracing" method as opposed to the "strict tracing" method employed in pre-Code cases. *In re E & S Comfort, Inc., Baehr v. Internal Revenue Service Center*, 92 B.R. 616 (Bankr.E.D.Pa.1988).

It was not error, pursuant to reasonable tracing method, for the Bankruptcy Court to conclude that any funds disbursed to Hayes for repair of the Aircraft are traceable from the Account. Clearly any repairs effected on the Aircraft increased their value. Moreover, the record shows that the only purpose for the repairs was to prepare the planes for sale to Extra. The only question which remains is whether there was the factual support on the record to show that approximately $150,000 was spent from that account on repair of the planes.

There were several witnesses that testified that the money disbursed were employed to repair the Aircraft. There were no witnesses which could state absolutely that they had a first hand knowledge that any particular unit of cash was employed to effect specific repairs. However, all of the witness were in agreement that the funds were used to repair the Aircraft and that the repairs paid for were completed to their knowledge. There were no witnesses presented for any alternative proposition. Therefore, the Bankruptcy Court's factual finding that the funds so disbursed were indeed used to repair the Aircraft is not clearly erroneous.

IV. Conclusion.

After a careful and complete review of the record I conclude that the Bankruptcy Courts Opinion and Order of December 19, 1988, does not contain any clearly erroneous factual findings or errors of law. The

---

**1.** Nearly all of the evidence relied upon by the bankruptcy court was that of live testimony of the key players in the transactions in question.

decision of the Bankruptcy Court will be affirmed.