FILED
COURT OF APPEALS
DIVISION II

2014 JUN -3 AM 8: 34

STATE OF WASHINGTON
BY_____
DEPUTY

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| ROBIN EUBANKS, ERIN GRAY, ANNA DIAMOND, and KATHY HAYES, | No. 44969-2-II |
| Respondents, | |
| v. | |
| KLICKITAT COUNTY and DAVID BROWN, | PUBLISHED OPINION |
| Appellants. | |

MAXA, J. – David Brown and Klickitat County appeal the trial court's denial of their motion to disqualify Thomas Boothe, counsel for Robin Eubanks, Erin Gray, Anna Diamond, and Kathy Hayes (collectively "the plaintiffs") in their sexual harassment suit against Brown. The trial court ruled that even though Boothe was Brown's former attorney he was not disqualified under Rule of Professional Conduct (RPC) 1.9 or RPC 1.18. We do not reach the merits of Brown's disqualification motion because we hold that Brown waived any right to require Boothe's disqualification because of the delay in filing his motion to disqualify. Accordingly, we affirm.

FACTS

*Brown's Communications With Boothe*

Brown, who at the time was a deputy prosecuting attorney for Klickitat County, decided to run for Klickitat County Prosecuting Attorney in the 2010 election. As Brown was preparing

to announce his candidacy, he became concerned with legal issues surrounding his decision to run for office. One of his concerns related to the Hatch Act, 5 U.S.C. §§ 1501-08, which restricts the political activities of individuals running for political office when they are employed in government positions that receive federal grant funds. Brown also was concerned about his rights as an at-will employee because another candidate for the prosecuting attorney position had been fired after she announced her candidacy.

In May 2010, Brown contacted Boothe, an attorney with employment law expertise, for advice. During the month of May, Brown and Boothe had several telephone conversations and exchanged numerous emails. The communications focused on the legal implications of Brown's decision to run for prosecuting attorney and other matters regarding Brown's employment.

In May 2010, Brown announced his candidacy to the public. A few days later, prosecuting attorney's office employees Eubanks and Gray filed a grievance accusing Brown of inappropriate conduct. On June 12, Brown called Boothe and talked with him for approximately 15 minutes. According to Brown, he informed Boothe that the allegations had been made. Boothe denies that he and Brown ever discussed the grievance.

On June 23, Brown emailed Boothe, forwarding links to two articles quoting Brown on the Hatch Act issues he was raising. Brown did not mention the grievances in the email. That email was the last contact between Brown and Boothe until 11 months later. Boothe never sent Brown a retainer letter, and did not bill him for their communications.

*Boothe's Representation of the Plaintiffs*

In December 2010, Eubanks and Gray filed a sexual harassment lawsuit against Brown. At that time, they were represented by two other attorneys. In June 2011, Boothe was contacted about serving as counsel for Eubanks and Gray. He investigated whether he had a conflict of interest based on his communications with Brown in 2010 and concluded that there was no disqualifying conflict that precluded him from representing Eubanks and Gray.

On July 13, Boothe sent a letter to Brown's counsel about becoming involved in the case and describing his earlier contacts with Brown. Brown's counsel told Boothe that Brown believed there was a conflict of interest because Brown and Boothe had had an attorney-client relationship the previous year. Boothe disagreed. In a letter to Brown's attorney, Boothe stated:

> Because the Hatch Act is outside of my practice area . . . I explained that I was the wrong person to call for assistance. Nonetheless, Mr. Brown and I discussed it a few times after he said he would just welcome thoughts from an outside attorney. I never represented him or gave any advice of any kind. We were, instead, two colleagues conversing.

Clerk's Papers (CP) at 25-26. Boothe also stated that he had conferred with both the Washington State Bar Ethics Hotline and private counsel regarding his ethical obligations. Boothe formally substituted as counsel on July 28, 2011. Diamond and Hayes later were added as plaintiffs.

The litigation proceeded with Boothe representing the plaintiffs. Over the next 16 months, the parties engaged in document production and discovery and were involved in an appeal regarding whether venue was proper in Clark County. Boothe recorded more than 450 hours of time and his paralegals recorded over 675 hours on the litigation. During this period Brown did not mention his claim that Boothe had a conflict of interest or suggest that Boothe

should be disqualified. Only after the parties started taking depositions in November 2012 did Brown raise the issue again, taking the position that Boothe had a disqualifying conflict.

*Motion to Disqualify Boothe*

In January 2013, Brown moved to disqualify Boothe. Brown claimed that he had an attorney-client relationship with Boothe in 2010 and that he shared confidences with Boothe about the claims being brought against him in the sexual harassment suit. Brown argued under RPC 1.9(a) that Boothe must be disqualified because he was representing clients in the same or substantially related matter in which his clients' interests were materially adverse to Brown. Brown further argued that even if an attorney-client relationship did not exist, Boothe owed duties to him as a prospective client under RPC 1.18. The County joined in Brown's motion to disqualify Boothe.

The plaintiffs opposed the motion, asserting that there was no attorney-client relationship because, among other reasons, Boothe gave no legal advice and there was no retainer or engagement letter. The plaintiffs further argued that there was no relationship between Brown's inquiry regarding the Hatch Act and employment law issues and the plaintiffs' sexual harassment claim, and that there was no evidence that confidential information was communicated.

The trial court denied Brown's motion to disqualify Boothe, concluding that even assuming the truth of Brown's version of events, disqualification was not required under RPC 1.9(a) or RPC 1.18. We granted Brown's and the County's motion for discretionary review.

## ANALYSIS

The plaintiffs argue that Brown waived his right to require Boothe's disqualification because of excessive delay in bringing the motion. Although the plaintiffs argued waiver below,

4

the trial court did not address this argument and instead ruled on the merits. However, "we can affirm a trial court on any alternative basis supported by the record and pleadings, even if the trial court did not consider that alternative." *Champagne v. Thurston County*, 134 Wn. App. 515, 520, 141 P.3d 72 (2006), *aff'd*, 163 Wn.2d 69, 178 P.3d 936 (2008). We hold as a matter of law that Brown waived his right to move for Boothe's disqualification. Accordingly, we need not reach the merits of Brown's disqualification motion.[1]

Our Supreme Court has stated that the "failure to act promptly in filing a motion for disqualification may warrant denial of [the] motion." *First Small Bus. Inv. Co. v. Intercapital Corp.*, 108 Wn.2d 324, 337, 738 P.2d 263 (1987).

> "A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed."

*First Small Business*, 108 Wn.2d at 337 (quoting *Cent. Milk Producers Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978)). "Delay in filing [a] motion to disqualify is suggestive of its use for purely tactical purposes and could be the sole grounds for denying a motion to disqualify." *In re Firestorm 1991*, 129 Wn.2d 130, 145, 916 P.2d 411 (1996).

The combination of three factors compels our conclusion that Brown waived any right to require Boothe's disqualification. First, Brown's delay in filing the motion to disqualify was excessive. Boothe notified Brown that he was substituting as counsel for the plaintiffs in July

---

[1] The County joined Brown's motion to disqualify Boothe and filed its own motion for discretionary review. However, there is no claim that the County was Boothe's client or has an independent basis for seeking Boothe's disqualification. As a result, Brown's waiver of his right to require Boothe's disqualification also precludes a non-client like the County from pursuing Boothe's disqualification.

2011. Although Brown immediately claimed that Boothe had a conflict of interest, he did not move for disqualification until January 2013, 18 months after he received notice of Boothe's representation of the plaintiffs. In fact, after initially raising the issue, Brown did not even mention the possibility of disqualification for the next 16 months. In *Firestorm*, our Supreme Court indicated that a nine month delay in filing a motion to disqualify was significant in evaluating whether disqualification was warranted as a sanction for inappropriate ex parte contact with a witness. 129 Wn.2d at 144-45. Brown waited twice that long before bringing his motion to disqualify.

Second, Boothe had engaged in extensive litigation activities on behalf of his clients before Brown filed the motion to disqualify. Although the appellate record does not contain much detail regarding these activities, the parties exchanged written discovery, argued discovery motions in November 2011, and after that engaged in "eleven months of discovery struggles and document production." CP at 97-98. Brown also moved to compel production of the plaintiffs' counseling and psychotherapy records in November 2012. In November 2012, the parties scheduled depositions of the four plaintiffs, Brown, and another witness, and after two days of these depositions Brown raised the disqualification issue.[2] During this time, Boothe recorded more than 450 hours of time and his paralegals recorded over 675 hours on the litigation. Boothe also advanced over $10,000 in litigation costs. Our Supreme Court in *Firestorm* found

---

[2] While discovery was ongoing Brown also appealed the trial court's ruling that venue was proper in Clark County. We accepted discretionary review and affirmed, and the Supreme Court subsequently granted Brown's petition for review. *Eubanks v. Brown*, 170 Wn. App. 768, 285 P.3d 901 (2012), *review granted*, 176 Wn.2d 1026, 301 P.3d 1047 (2013). The appeal still is pending in the Supreme Court. It appears that separate appellate counsel is representing the plaintiffs in this appeal.

significant that counsel had expended over 640 hours and incurred litigation expenses during the period that the opposing party delayed in filing a motion to disqualify. 129 Wn.2d at 144-45.

Third, the plaintiffs would suffer prejudice if Boothe was disqualified. Although there is no evidence that substituting new counsel for Boothe will affect the outcome of the case, the record shows that disqualifying him may have a significant psychological impact on the plaintiffs. Boothe emphasized the plaintiffs' emotional fragility. In his declaration Booth stated that the three plaintiffs who had been deposed before Brown filed the motion to disqualify suffered stress reactions during the depositions – one cried throughout the deposition and needed 12 breaks to compose herself; the second burrowed her shoulder into Boothe's for security and needed two breaks; and the third was short of breath, panicked and shaking, and needed four breaks. Boothe claimed that the development of trust in him over 18 months was especially important for the plaintiffs, and that having to bring in new counsel would be "devastating" for them. CP at 101. Brown did not attempt to rebut this testimony.

We see no indication that Brown delayed filing the motion to disqualify for tactical reasons. In fact, Boothe made it a point to emphasize the professionalism of Brown's counsel throughout the case. Brown's explanation was that he delayed filing the motion to disqualify because Boothe had suggested in a July 2011 letter that the plaintiffs might dismiss Brown from the lawsuit if Brown prevailed on the venue matter. Therefore, Brown did not want to bring the motion while the appeal of the venue matter was pending. In addition, Brown stated that Boothe threatened that if Brown raised the conflict issue he would "make it a war." CP at 484. In order to avoid a contentious dispute and with the hope that Brown would be dismissed and the issue avoided, Brown delayed filing the motion to disqualify.

7

Delaying the filing of what is expected to be a contentious motion to disqualify based on a hope that the issue will resolve itself may be understandable in certain situations, and *initially* may have been the prudent course of action here. However, when the attorney subject to disqualification is actively involved in ongoing litigation, a party cannot continue on this course of action indefinitely. At a certain point before that attorney engages in extensive litigation work a party must decide whether to move forward with the motion to disqualify or to waive the right to disqualify. Under the circumstances here Brown should have moved for disqualification far earlier.

We hold that Brown waived the right to have Boothe disqualified by waiting 18 months and by allowing Boothe to participate in extensive litigation activities before filing the motion to disqualify, particularly when disqualification after that delay would prejudice the plaintiffs. Further, because the County is a non-client, Brown's waiver also precludes the County from pursuing Boothe's disqualification.

We affirm.

MAXA, J.

We concur:

BJORGEN, ACJ

LEE, J.

8