# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| CONSTRUCTION LOAN SERVICES II, LLC, a Washington limited liability company in its capacity as servicer and agent for BUILDERS CAPITAL OPPORTUNITY FUND, LLC, a Washington limited liability company, | No.  59088-3-II |
| Appellant, | |
| v. | |
| ECM  RIVERSIDE LLC, an Oregon limited liability company, | PUBLISHED OPINION |
| Respondent. | |

LEE, J. — Construction Loan Services II, LLC (CLS) appeals the superior court's order granting the Receiver's motion to administer claims and determine claim priority and the superior court's denial of CLS's motion to reconsider that order.  Specifically, CLS argues that the superior court erred when it determined (1) that a deposit made by LGI Homes – Washington LLC (LGI) pursuant to a subsequently rejected purchase and sale agreement is not part of the receivership estate and (2) that LGI was entitled to return of the deposit prior to distribution of the receivership estate assets to secured creditors.

Because Washington's receivership statute, chapter 7.60 RCW, provides that a receiver's rejection of an executory contract constitutes a breach of contract occurring immediately prior to the receiver's appointment, we hold that the superior court did not err when it determined that LGI's deposit was not part of the receivership estate.  However, because there were no funds

available prior to the Receiver's appointment and the only funds currently available to return the deposit are funds generated after the establishment of the receivership estate, LGI's entitlement to return of its deposit amounts to an unsecured claim against the receivership estate. Based on the schedule of priorities provided in RCW 7.60.230, LGI's claim falls below that of secured creditors of the receivership estate, and the superior court erred when it ordered that LGI is entitled to return of its deposit prior to any other receivership estate distributions. Therefore, we affirm in part and reverse in part.

FACTS

A.     BACKGROUND

In December 2017, ECM Riverside LLC (ECM) purchased land, known as the Riverside Estates (Property), that it intended to subdivide into residential lots. In May 2018, ECM entered into a purchase and sale agreement (PSA) for the Property with LGI, a homebuilder.

The terms of the PSA[1] divided LGI's purchase into "Phase 1" and "Phase 2." Clerk's Papers (CP) at 92 (boldface omitted). Phase 1 consisted of 132 lots, for which LGI would pay a purchase price of $11,880,000. Phase 2 consisted of 50 lots, for which LGI would pay $4,500,000. Pursuant to the PSA, LGI paid a deposit of $1,621,000 for the Property, with $1,171,000 allocated as the "'Phase 1 Deposit'" and $450,000 allocated as the "'Phase 2 Deposit.'" CP at 142. The PSA provided that the deposits would be applied to the Phase 1 and Phase 2 purchase prices, respectively, at each closing.

---

[1] Between May 2018 and October 2020, ECM and LGI amended the PSA six times. The amendments adjusted the ultimate purchase prices, allocations of deposits, and legal descriptions of Phase 1 and Phase 2 properties, among other terms. Unless explicitly noted, references to the PSA are based on the contract terms following the sixth and final amendment.

LGI deposited $1,621,000 with an escrow agent. The PSA then provided that the total deposit "shall be released to [ECM] . . . provided that [ECM]'s obligation to return the Deposit to [LGI], to the extent required to do so under this [PSA], shall be secured by a mortgage lien against the [Property] in the form of the Deed of Trust attached hereto." CP at 93.

In the event that ECM breached the PSA, LGI could select one of two remedies. Specifically, the PSA stated that LGI

> shall have the right to elect either of the following remedies: (i) to terminate this [PSA] and receive (a) reimbursement from [ECM] for its reasonable out-of-pocket expenses incurred in investigating the Property, not to exceed $25,000 and (b) return of the Deposit (except to the extent previously applied to the Phase I Purchase Price), . . . or (ii) to take any and all legal actions necessary to compel [ECM]'s specific performance hereunder . . . provided that if the remedy of specific performance is unavailable then [LGI] shall be entitled to seek any remedies available at law or equity.

CP at 107.

> In August 2018, LGI and ECM recorded a Deed of Trust (LGI Deed)

> for the purpose of securing performance of [ECM]'s obligation to refund to [LGI] the Deposit (as defined in that certain [PSA] dated May 10, 2018 . . . by and between [ECM], as seller, and [LGI], as buyer), such Deposit being in the amount of $1,621,000, if and to the extent [ECM] is required to do so under the terms of such [PSA].

CP at 347. LGI and ECM listed the land securing the LGI Deed in an attachment. The attachment shows that the LGI Deed created a security interest *only* in the Phase 1 property.[2] The entire deposit was released to ECM.

---

[2] There is no record that LGI had a security interest in the form of a deed of trust for the Phase 2 property, despite allocating $450,000 of the $1,621,000 deposit for the Property to Phase 2.

In January 2019, ECM entered into a loan agreement with Construction Loan Services, LLC (CLS),[3] in which ECM borrowed $3,524,122.22. The loan was secured by the Property in a Deed of Trust, dated January 31, 2019 (CLS Deed). The CLS Deed provided that in the event of a default, CLS could apply to the superior court for the appointment of a receiver.[4] CLS and ECM subsequently amended the loan and increased the principal to $4,154,122.22. The loan was set to mature in March 2020.

In July 2019, LGI and ECM closed on the Phase 1 property. Per the terms of the PSA, Phase 2 closing was to occur by December 2020.

B.     ECM DEFAULT AND SUBSEQUENT RECEIVERSHIP

By March 2020, ECM had failed to make payments to CLS or pay off its loan, thereby defaulting per the terms of the loan agreement. Then, in May 2020, CLS petitioned the superior court to appoint a receiver to "ensure to the orderly and efficient liquidation of the Property for the benefit of all creditors." CP at 894.

In November 2020, the superior court appointed a general receiver, Pacific Crest Realty Advisors, LLC (Receiver). The order appointing a receiver stated in part:

---

[3] Construction Loan Services II, LLC, as the authorized servicer and agent for Builders Capital Opportunity Fund, LLC, is the appellant in this appeal. Construction Loan Services, LLC is a related, but separate, entity from Construction Loan Services II, LLC. Construction Loan Services, LLC originated the loan to ECM. Construction Loan Services, LLC later transferred all of its rights, interest, and title in the loan to Builders Capital Opportunity Fund, LLC. For the purposes of this opinion, and to avoid confusion, the appellant and its related entities will be referred to collectively as "CLS."

[4] A receiver is "a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person." RCW 7.60.005(10). A "person" may be an individual or an entity. RCW 7.60.005(8).

4

> The Receiver is hereby appointed as general receiver with exclusive possession and control over [ECM]'s property, wherever located, including without limitation the property identified in Exhibit A hereto, and all rights, entitlements, leases, interests, contracts, contracts for sale, and business affairs associated with and relating to [ECM]'s property (collectively, the "Estate").

CP at 2 (boldface omitted) (underlining in original). Exhibit A identified the Property.

In January 2021, LGI moved for an order from the superior court to enforce the PSA. LGI argued that its only remaining obligation under the PSA for Phase 2 was to pay the full purchase price of $4,500,000, which it was prepared to do. The Receiver objected to LGI's motion, arguing that the PSA was an executory contract that it had the authority to reject and the Receiver was already considering other offers for Phase 2 for substantially higher purchase prices.

The superior court agreed with the Receiver and denied LGI's motion. The superior court also found that the PSA qualified as an executory contract that the Receiver could reject or assume pursuant to RCW 7.60.130.

The Receiver then moved to reject the PSA. In March 2021, LGI filed a proof of claim with the superior court, asserting that it was owed the $450,000 deposit for Phase 2.[5] In May 2021, the superior court granted the Receiver's motion and issued an order granting the Receiver's rejection of the PSA. The Receiver did not return to LGI its $450,000 Phase 2 deposit.

---

[5] Several ECM creditors, including CLS, filed claims against the receivership estate. LGI also made additional claims, specifically claims for breach of contract and for attorney fees. The Receiver determined that LGI's breach of contract claim and attorney fees claim were both unsecured and to be paid following any claims of secured creditors and receivership estate administrative costs.

CLS appeals only the superior court's decision that LGI's deposit was not part of the receivership estate and that LGI was entitled to return of its deposit ahead of the estate's secured creditors. CLS does not argue that LGI has no claims against the receivership estate; thus, LGI's additional claims are not relevant to this appeal.

In November 2022, the Receiver sold the Phase 2 property to another buyer for an ultimate purchase price of $6,300,000. The receivership estate netted $5,928,813.48 in proceeds from the sale.

In December 2022, the Receiver moved for an order approving a preliminary partial distribution of the proceeds to CLS. While the Receiver was still analyzing claims against the receivership estate to determine claim validity and priority, it sought to make a preliminary distribution to CLS, which had the largest outstanding debt of any of the claimants. At that time, CLS claimed that its loan debt exceeded $7,000,000 and the loan was accruing interest at 18% per year. The Receiver wanted to reduce the interest accrual from CLS's loan and argued that a preliminary distribution would still "retain and preserve sufficient estate funds to cover the ongoing actual, necessary costs and expenses of the administration of [the] receivership estate," and other secured claimants would not be prejudiced. CP at 488. The superior court approved a preliminary distribution to CLS for $3,000,000.

Then, in March 2023, the Receiver filed a motion to administer claims and determine claim priority. $2,928,813.48 of the Phase 2 proceeds remained in the receivership estate. In its motion, the Receiver noted that after review of the claims against the receivership estate and supporting documentation, it believed that CLS held "a first position lien on Phase 2 sale proceeds in the amount of $7,442,774.13, subject to reduction by the $3,000,000 amount CLS ha[d] already received." CP at 588.

However, the Receiver also recommended that CLS's distribution amount "should be reduced by the amount of Phase 2 earnest money provided by LGI." CP at 588. Specifically, the Receiver stated that $450,000 was "traceable to LGI's earnest money deposit for the Phase 2

6

Property Sale." CP at 589. The Receiver cited to bankruptcy cases and argued that "[i]n the bankruptcy context, courts have held that funds held in escrow, and funds traceable to escrow deposits which have not been earned, are not property of the estate." CP at 590. Further, the Receiver argued that because the PSA Phase 2 closing never occurred, ECM never gained title to the Phase 2 deposit, and therefore, the "$450,000 cannot be considered Receivership Estate Property, [and] it should be returned to LGI prior to any other distributions." CP at 590.

CLS objected to the Receiver's recommendation that LGI receive $450,000 ahead of CLS's claim. CLS argued that bankruptcy principles were not applicable and even if the Phase 2 deposit was traceable to an escrow account, LGI ultimately had an unsecured claim.

The superior court granted the Receiver's request to return the $450,000 to LGI prior to any other distributions. In its written order (May 11, 2023 Order), the superior court found:

> 1.    The Phase 2 earnest money deposit in the amount of $450,000 traceable to LGI (the "LGI Earnest Money Deposit") is not property of the Receivership Estate as a result of the Receiver's rejection of the ECM/LGI Purchase and Sale Agreement for Phase 2, and acceptance of a new purchase and sale agreement with D.R. Horton, previously approved by this court. Pursuant to RCW 7.60.130, the Receiver's rejection of the LGI Purchase and Sale Agreement is treated as a breach of that contract, occurring immediately prior to the Receiver's appointment, and terminated any right of the Receiver to retain the LGI Earnest Money Deposit.
>
> 2.    Petitioner CLS holds a valid, first position lien on proceeds of sale of the ECM Riverside Phase 2 property; subject, however, to the priorities set forth in RCW 7.60.230(1)(b). As the creditor obtaining the appointment of the Receiver, the proceeds of CLS's collateral must first be applied to the extent necessary to pay actual, necessary costs and expenses incurred in the administration of the Receivership Estate, including allowed fees and reimbursement of reasonable charges and expenses of the Receiver and professional persons employed by the Receiver.

CP at 740. The superior court ordered that "[p]rior to any distributions of Estate property, the Receiver shall refund LGI's $450,000 Phase 2 earnest money deposit to LGI." CP at 740. The superior court also allowed CLS's claim "in the amount of $7,442,774.13, including interest and other charges, less the preliminary distribution already received by [CLS] in the amount of $3,000,000." CP at 740.

CLS moved for reconsideration of the superior court's order granting the Receiver's motion to administer claims and determine claim priority. The superior court denied CLS's motion.

CLS appeals.[6]

ANALYSIS

CLS argues that the superior court erred when it held that the Phase 2 deposit was not part of the receivership estate and ordered the return of LGI's Phase 2 deposit from the receivership estate. CLS also argues that the superior court erred when, based on bankruptcy law, it allowed

_____

[6] CLS filed a notice of appeal of the superior court's May 11, 2023 Order and motion for reconsideration. Following CLS's appeal, LGI filed a motion to this court to determine appealability. LGI argued that CLS incorrectly filed a notice of appeal, appealing only portions of an order in a case that was not yet final. LGI requested this court determine whether the May 11, 2023 Order was appealable as a matter of right or whether the appeal should be converted to a Notice of Discretionary Review.

We determined that absent a CR 54(b) ruling from the superior court, the matter was not appealable as a matter of right. However, if the superior court entered a CR 54(b) ruling, then the order was appealable. In August 2023, CLS moved for a CR 54(b) determination from the superior court and to stay enforcement of the superior court's May 11, 2023 Order. Additionally, CLS requested that the $450,000 be held in the court registry pending the appeal. During the motion hearing, the court determined that good reason existed to retain the $450,000 in the court registry pending appeal. The superior court also entered a CR 54(b) determination for the purposes of this appeal.

LGI's allegedly unsecured claim against the receivership estate to be paid ahead of CLS's first position, secured claim.

LGI argues that the superior court correctly held that the Phase 2 deposit was not property of the receivership estate and it was appropriate for the superior court to look to bankruptcy law for guidance in its holding. Furthermore, LGI asserts that the superior court properly held that LGI should receive its Phase 2 deposit prior to any distributions from the receivership estate.

We hold that the superior court did not err when it ruled the Phase 2 deposit was not part of the receivership estate. However, we agree with CLS that the superior court erred when it ordered LGI receive return of its deposit prior to any distributions from the receivership estate.

A.    STANDARD OF REVIEW

A trial court's entry of a judgment pursuant to a receivership is reviewed for an abuse of discretion. *Matter of Applied Restoration, Inc.*, 28 Wn. App. 2d 881, 891, 539 P.3d 837 (2023), *pet. for rev. filed in* No. 1028831 (Mar. 13, 2024). A denial of a motion for reconsideration is also reviewed for an abuse of discretion. *Dynamic Res., Inc. v. Dep't of Revenue*, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022).

A trial court abuses its discretion when its decision is "'manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Id.* (quoting *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 758, 260 P.3d 967 (2011), *review denied*, 173 Wn.2d 1029 (2012)). An appellate court may affirm a trial court on any basis supported by the record. *Eubanks v. Klickitat County*, 181 Wn. App. 615, 619, 326 P.3d 796, *review denied*, 181 Wn.2d 1012 (2014).

Statutory interpretation is a question of law that we review de novo. *Umpqua Bank v. Shasta Apartments, LLC*, 194 Wn. App. 685, 693, 378 P.3d 585, *review denied*, 186 Wn.2d 1026

(2016). "The primary objective of statutory interpretation is to 'ascertain and carry out the Legislature's intent.'" *AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 87, 546 P.3d 385 (2024) (quoting *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). "To determine legislative intent, we first look to the plain language of the statute and consider the meaning of the provision at issue, the context of the statute, and related statutes." *Umpqua Bank*, 194 Wn. App. at 693. If legislative intent is clear from the statute's plain language, our inquiry ends. *King County v. King County Water Dist. No. 20*, 194 Wn.2d 830, 853, 453 P.3d 681 (2019). Where the legislature has used certain statutory language in one instance, but different language in another, there is a difference in legislative intent. *Id.* at 855.

B.    WASHINGTON RECEIVERSHIP ACT

1.    Legal Principles

Under Washington's receivership statute, chapter 7.60 RCW, when a party has a probable right or interest in property that is in danger of being lost or materially injured, and that property is in possession of an adverse party, courts may appoint a receiver. RCW 7.60.025(1)(a). A receiver is an agent of the court who can "take possession of, manage, or dispose of property of a person." RCW 7.60.005(10). Generally, "the receiver stands in the shoes of the insolvent." *Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.*, 90 Wn.2d 195, 198, 579 P.2d 1341 (1978).

There are two types of receivers: general receivers and custodial receivers. RCW 7.60.015. Courts appoint general receivers "to take possession and control of all or substantially all of a

10

person's[7] property with authority to liquidate that property and, in the case of a business over which the receiver is appointed, wind up affairs." RCW 7.60.015; *see* RCW 7.60.060.

A receivership estate is "the entirety of the property with respect to which a receiver's appointment applies." RCW 7.60.005(3). Receivership property "includes all right, title, and interests, both legal and equitable, and including any community property interest, in or with respect to any property of a person with respect to which a receiver is appointed, regardless of the manner by which the property has been or is acquired." RCW 7.60.005(9). Property may also be "any proceeds, products, offspring, rents, or profits of or from property in the estate." RCW 7.60.005(9).

A general receiver has the power to assume or reject any executory contract of the person over whose property the receiver is appointed. RCW 7.60.130(1). An "executory contract" is

> a contract where the obligation of both the person over whose property the receiver is appointed and the other party to the contract are so far unperformed that the failure of either party to the contract to complete performance would constitute a material breach of the contract, thereby excusing the other party's performance of the contract.

RCW 7.60.005(4). Regarding executory contracts, RCW 7.60.130 further provides:

> Any obligation or liability incurred by a general receiver on account of the receiver's assumption of an executory contract . . . shall be treated as an expense of the receivership. A general receiver's rejection of an executory contract . . . shall be treated as a breach of the contract . . . occurring immediately prior to the receiver's appointment; and the receiver's right to possess or use property pursuant to any executory contract . . . shall terminate upon rejection of the contract . . . . The other party to an executory contract . . . that is rejected by a general receiver may take such steps as may be necessary under applicable law to terminate or cancel the contract . . . . The claim of a party to an executory contract . . . resulting from

---

[7] A person includes "an individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, governmental entity, or other entity, of any kind or nature." RCW 7.60.005(8).

a general receiver's rejection of it shall be served upon the receiver in the manner provided for by RCW 7.60.210 within thirty days following the rejection.

RCW 7.60.130(2).

All claims against a receivership that arise prior to the receiver's appointment, "other than claims of creditors with security interests in or other liens against property of the estate," must be served in accordance with RCW 7.60.210, otherwise the claim will be barred. RCW 7.60.210(1). Claims must be written in a "'Proof of Claim'" form and set forth the nature and amount of the claim. RCW 7.60.210(3). Claims, "executed and served in accordance with this section, constitute[] prima facie evidence of the validity and amount of the claim[s]." RCW 7.60.210(4).

RCW 7.60.230 provides a schedule of claim priorities for general receiverships. Specifically, "[a]llowed claims in a general receivership shall receive distribution under this chapter in the order of priority under (a) through (h) of this subsection and, with the exception of (a) and (c) of this subsection, on a pro rata basis." RCW 7.60.230(1). Secured creditors with liens on the receivership estate property hold first position in the distribution of estate proceeds. RCW 7.60.230(1)(a).

> However, the receiver may recover from property securing an allowed secured claim the reasonable, necessary expenses of preserving, protecting, or disposing of the property to the extent of any benefit to the creditors. If and to the extent that the proceeds are less than the amount of a creditor's allowed claim or a creditor's lien is avoided on any basis, the creditor is an unsecured claim under (h) of this subsection. Secured claims shall be paid from the proceeds in accordance with their respective priorities under otherwise applicable law.

RCW 7.60.230(1)(a). Additionally,

> [a]ctual, necessary costs and expenses incurred during the administration of the estate, other than those expenses allowable under (a) of this subsection, including allowed fees and reimbursement of reasonable charges and expenses of the receiver and professional persons employed by the receiver under RCW 7.60.180.

12

> Notwithstanding (a) of this subsection, expenses incurred during the administration of the estate have priority over the secured claim of any creditor obtaining or consenting to the appointment of the receiver.

RCW 7.60.230(1)(b).

Receiverships are an equitable remedy. *Bero*, 195 Wn. App. at 179. Courts have broad discretion over receiverships and are afforded wide latitude in fashioning relief under their equitable powers. *Id.*; *Friend v. Friend*, 92 Wn. App. 799, 803, 964 P.2d 1219 (1998), *review denied*, 137 Wn.2d 1030 (1999); RCW 7.60.055.[8] Because receiverships are an equitable remedy and courts have broad discretion, we review superior court rulings "regarding the receivership that order turnover, disallow claims, and enter judgment, for an abuse of discretion." *Applied Restoration*, 28 Wn. App. 2d at 891; *accord In re Receivership of Castle Walls*, ___ Wn. App. 2d ___, 545 P.3d 816, 820 (2024) (stating "'[c]hapter 7.60 RCW gives the trial court broad discretion over receiverships' and, 'because a receivership is an equitable remedy,' this court reviews the trial court's decisions to both order turnover and enter judgment pursuant to a receivership under an abuse of discretion standard" (alteration in original) (quoting *Bero*, 195 Wn. App. at 175, 179), *pet. for rev. filed in* No. 1030185 (May 1, 2024)).

---

[8] RCW 7.60.055(1) provides in part:

> Except as otherwise provided for by this chapter, the court in all cases has exclusive authority over the receiver, and the exclusive possession and right of control with respect to all real property and all tangible and intangible personal property with respect to which the receiver is appointed, wherever located, and the exclusive jurisdiction to determine all controversies relating to the collection, preservation, application, and distribution of all the property, and all claims against the receiver arising out of the exercise of the receiver's powers or the performance of the receiver's duties.

Washington case law on receiverships is limited. Thus, where necessary and appropriate, we may refer to federal bankruptcy law for guidance. *Castle Walls*, 545 P.3d at 823 ("Similar to the appointment of a receiver and the resulting estate, 'filing for bankruptcy creates an estate which includes all legal or equitable interests of the debtor in property as of the commencement of the case.'" (internal quotation marks omitted) (quoting *In re Castleman*, 75 F.4th 1052, 1056 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 813 (2024))); *see also Fid. Bank, Nat'l Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (stating "given that a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors, we find it appropriate and helpful to refer to the rules governing appellate standing in bankruptcy proceedings"); *St. John Med. Ctr. v. State v. Dep't of Soc. & Health Servs.*, 110 Wn. App. 51, 60, 38 P.3d 383 (looking to federal bankruptcy law for guidance in an insurance insolvency context), *review denied*, 146 Wn.2d 1023 (2002).

2.      LGI's Deposit is an Unsecured Claim

CLS argues that the superior court erred in its holding that LGI's Phase 2 deposit was traceable within the Phase 2 sale proceeds that the Receiver could then distribute back to LGI. Specifically, CLS argues that "the LGI Earnest Money Deposit was paid to ECM in August 2018[,] . . . more than two years before [the] Receiver's appointment and . . . those funds were fully expended well before [the] Receiver's appointment." Br. of Appellant at 6-7. Accordingly, CLS asserts that the Phase 2 deposit was "never" part of the receivership estate and cannot be returned by the Receiver through the receivership estate. Br. of Appellant at 12.

LGI agrees that its Phase 2 deposit was not part of the receivership estate, but on the grounds that ECM never had title to the $450,000 because those funds were supposed to have been

applied the Phase 2 purchase price according to the terms of the breached PSA and the Phase 2 deposit is directly traceable within the Phase 2 sale proceeds. Further, LGI urges this court to look to bankruptcy law for guidance, which provides that escrow funds "that are not ultimately applied to a purchase price pursuant to contract terms due to no fault of the buyer are not property of the seller's estate" and the buyer is entitled to full return of those escrow funds. Br. of Resp't at 20-21 (citing *Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257, 261 (1st Cir. 1963)).

The superior court's May 11, 2023 Order amounts to a judgment regarding the receivership. Thus, we review the superior court's decision for abuse of discretion.[9] *Applied Restoration*, 28 Wn. App. 2d at 891.

a.    Phase 2 deposit is not receivership estate property

Here, the record shows that LGI and ECM entered into the PSA regarding ECM's sale of the Property. Separately, ECM defaulted on loan payments to CLS and CLS petitioned the superior court for the appointment of a receiver. The superior court appointed a general receiver to take control of ECM's assets.[10]

---

[9] CLS argues that the correct standard of review is de novo because the issues in this case present the question of the *application* of Washington's receivership statute. CLS claims that the superior court exceeded its authority when it apportioned $450,000 of the receivership estate for return to LGI. However, CLS fails to address either *Applied Restoration* or *Castle Walls*, which both clearly state that a trial court's decision to enter judgment pursuant to a receivership is reviewed for abuse of discretion. *Applied Restoration*, 28 Wn. App. 2d at 891; *Castle Walls*, 545 P.3d at 820. Thus, the standard of review is abuse of discretion.

[10] The record is not clear if ECM had other assets outside the Phase 2 property. The order appointing the receiver explicitly states that the superior court appointed a *general* receiver. General receivers "take possession and control of all or substantially all of a person's property." RCW 7.60.015. Thus, this opinion assumes that the Phase 2 property constituted the bulk, if not all, of ECM's assets.

When the Receiver took possession of ECM's assets, LGI had closed only on Phase 1 property. Because the PSA contemplated the closing of *both* Phase 1 and Phase 2 properties, and several performance obligations remained on the part of both ECM and LGI, including closing on Phase 2, the PSA was an executory contract. RCW 7.60.005(4).

The Receiver rejected the PSA in accordance with its statutory powers. RCW 7.60.130. Based on the receivership statute, the Receiver's rejection of the PSA constitutes a "breach of the contract . . . *occurring immediately prior to the receiver's appointment*." RCW 7.60.130(2) (emphasis added). Thus, we view the breach of the PSA outside the receivership context, i.e., as an event that occurred "prior to the receiver's appointment." RCW 7.60.130(2). If the rejection of the PSA was a breach that occurred prior to the appointment of the Receiver, then we must consider what would happen in a circumstance whereby ECM breached the PSA with LGI. In other words, this becomes a contract dispute and we look to the terms of the contract.

Here, Article 11 of the PSA clearly outlined what would occur in the case of ECM's breach. Specifically, if ECM breached the PSA, LGI would have the right to either

> terminate this [PSA] and receive (a) reimbursement from [ECM] for its reasonable out-of-pocket expenses incurred in investigating the Property, not to exceed $25,000 and (b) *return of the Deposit* (except to the extent previously applied to the Phase I Purchase Price), . . . or (ii) to take any and all legal actions necessary to compel [ECM]'s specific performance hereunder . . .; provided that if the remedy of specific performance is unavailable then [LGI] shall be entitled to seek any remedies available at law or equity.

CP at 107 (emphasis added). The record shows that LGI deposited a total of $1,621,000 in escrow, with $1,171,000 allocated to Phase 1, to be applied to the Phase 1 purchase price, and $450,000 to

16

Phase 2, to be applied to the Phase 2 purchase price. Therefore, based on the terms of the PSA, LGI would be entitled to return of its Phase 2 deposit because Phase 2 never closed.[11]

CLS argues that because the superior court did not impose any terms or conditions on the Receiver in the May 11, 2023 Order with respect to returning the Phase 2 deposit, the rejection of the PSA is "simply treated 'as a breach of contract'" without any further action necessary on the part of the Receiver. Br. of Appellant at 8. CLS then argues that RCW 7.60.130(2) does not allow for rescission of the PSA, which is the only "framework under which earnest money may actually be returned in failed transactions." Br. of Appellant at 9. CLS's arguments are unpersuasive.

First, while RCW 7.60.130(1) allows a superior court to "condition . . . rejection of any executory contract . . . on the terms and conditions the court believes are just and proper under the particular circumstances of the case," it does not *require* a court to impose conditions. Moreover, the superior court's decision to *not* impose terms and conditions following a receiver's rejection of an executory contract does not otherwise change a receiver's statutory powers and duties. *See* RCW 7.60.060; RCW 7.60.130.

CLS cites to *Willener v. Sweeting*[12] for the proposition that the only framework under which a deposit can be returned is when a contract is rescinded. *Willener* has no such holding. *Id.* In *Willener*, *both* parties failed to perform according to their contract. *Id.* at 396. Further, the *Willener* court's discussion of rescission was in the context of a possible equitable remedy based on the facts of *that* case. *Id.* at 397. Here, the Receiver rejected the PSA, resulting in the breach

---

[11] Because the superior court approved the Receiver's request to reject the PSA, specific performance is not an available remedy.

[12] 107 Wn.2d 388, 397, 730 P.2d 45 (1986).

of the PSA, functionally making it ECM's breach through no fault of LGI. Therefore, *Willener* is inapposite, and as discussed above, Article 11 of the PSA provided what happens in the case of ECM's breach.

Because the breach must be viewed as occurring prior to the appointment of the Receiver, LGI's entitlement to its deposit is "outside" the receivership. RCW 7.60.130(2). Indeed, RCW 7.60.130(2) provides that upon a receiver's rejection of an executory contract, the receiver's right to possess or use property pursuant that contract "shall terminate." Therefore, the Receiver has no right to possess or administer the $450,000, and the $450,000 cannot be considered as part of the receivership estate that is ultimately distributed to creditors. Accordingly, we agree with LGI's reasoning and with the superior court's finding of fact 1 in the May 11, 2023 Order. The Phase 2 deposit is not part of the receivership estate.[13]

> b.       LGI assumed risk of losing its deposit

The record shows that the Receiver did not return LGI's $450,000 Phase 2 deposit at the time the Receiver rejected the PSA. The record suggests that there were no funds, or insufficient funds, with which the Receiver could have returned the Phase 2 deposit to LGI. Based on the terms of the PSA, LGI's deposit was not sitting aside in a separate escrow account for the duration of the PSA. Instead, the *entire* deposit (for Phase 1 and Phase 2) was released from escrow to

---

[13] While we need not look beyond Washington's receivership statute to reach this conclusion, this holding also finds support within federal bankruptcy law. *See, e.g.*, *Gulf Petroleum*, 316 F.2d at 261 (stating that "money held in escrow is not property which vests in the trustee in bankruptcy"); *In re Summit Airlines, Inc.*, 94 B.R. 367, 368 (Bankr. E.D. Pa. 1988), *aff'd*, 102 B.R. 32 (E.D. Pa. 1989) (holding "all of the funds in, and reasonably traceable to, an escrow fund created by the Movant's deposits pursuant to an agreement . . . , frustrated by the Debtor's rejection thereof . . . , are not property of the Debtor's estate in which the estate has an equitable interest, entitling the Movant to possession thereof").

ECM and spent. Based on the record, the only funds available for *any* distribution to any claimant are proceeds from the sale of the Phase 2 property—funds that fall squarely within the receivership estate.

Thus, while LGI has a valid claim for the return of its deposit separate from creditors of the receivership estate, Washington's receivership statute does not appear to directly contemplate a scenario where the return of non-receivership funds can only be accomplished through receivership property. *See* RCW 7.60.130.

Here, LGI argues that it is "instructive and helpful" to look to bankruptcy law for guidance. Br. of Resp't at 20. Specifically, LGI argues that bankruptcy courts have determined "that funds held in escrow that are not ultimately applied to a purchase price pursuant to contract terms due to no fault of the buyer are not property of the seller's estate." Br. of Resp't at 20-21. We agree with this general principle, and as discussed above, the receivership statute essentially instructs as much. RCW 7.60.130. But the crux here is that the $450,000 is no longer in escrow and again, the only funds available to return the deposit are funds within the receivership estate.

LGI also argues, citing to bankruptcy principles and specifically *In re Summit Airlines*,[14] that funds no longer held aside in an escrow account, but traceable to an escrow account, must be returned to the depositor of those funds in the event of a breach of contract. However, we need not look to bankruptcy law. While the receivership statute may not contemplate the exact facts of this case, the receivership statute provides instruction on what happens when a party to a rejected executory contract has a claim.

---

[14] 94 B.R. 367, 368 (Bankr. E.D. Pa. 1988), *aff'd*, 102 B.R. 32 (E.D. Pa. 1989).

RCW 7.60.130(2) states:

> The other party to an executory contract . . . that is rejected by a general receiver may take such steps as may be necessary under applicable law to terminate or cancel the contract . . . . *The claim of a party to an executory contract . . . resulting from a general receiver's rejection of it shall be served upon the receiver in the manner provided for by RCW 7.60.210 within thirty days following the rejection.*

(Emphasis added.)

Courts look to the plain language of a statute and its context to determine legislative intent. *Umpqua Bank*, 194 Wn. App. at 693. While there are similarities between bankruptcy law and receivership law, there are some differences. For instance, a bankruptcy trustee has statutory authorization to act on behalf of creditors. *Winkler v. McCloskey*, 83 F.4th 720, 725 (9th Cir. 2023); *see* 11 U.S.C. § 544. Conversely, though the purpose of the receivership statute is to benefit secured creditors, a receiver "stands in the shoes of the receivership entities, not in the shoes of the creditors." *Winkler*, 83 F.4th at 727; *Morse Electro Prods. Corp.*, 90 Wn.2d at 198 (stating "the receiver stands in the shoes of the insolvent"); *see* RCW 7.60.060.

Here, RCW 7.60.130(2) provides that if a party to an executory contract has a claim arising from a receiver's rejection of that contract, the claim must be served upon on the receiver in the manner provided for in RCW 7.60.210.

RCW 7.60.210 states that any claim, "other than claims of creditors with security interests in or other liens against property of the estate," that arises prior to the receiver's appointment must be written in a "'Proof of Claim'" form and served upon the receiver. RCW 7.60.210(1), (3). RCW 7.60.210 is applicable to LGI, and based on the language of RCW 7.60.130(2), LGI has a claim "arising prior to the receiver's appointment." RCW 7.60.210(1). The record shows that LGI submitted a proof of claim form in accordance with RCW 7.60.210.

The receivership statute also provides a clear schedule of distribution priorities. RCW 7.60.230. Secured creditors with liens on the property of the receivership estate hold first position and "shall receive the proceeds from the disposition of their collateral." RCW 7.60.230(1)(a). The only exceptions to a secured creditor's first position priority are for a receiver to recover "the reasonable, necessary expenses of preserving, protecting, or disposing of the property to the extent of any benefit to the creditors" and

> [a]ctual, necessary costs and expenses incurred during the administration of the estate, other than those expenses allowable under (a) of this subsection, including allowed fees and reimbursement of reasonable charges and expenses of the receiver and professional persons employed by the receiver under RCW 7.60.180. Notwithstanding (a) of this subsection, expenses incurred during the administration of the estate have priority over the secured claim of any creditor obtaining or consenting to the appointment of the receiver.

RCW 7.60.230(1)(a), (b).

The record shows that while LGI had a deed of trust in place securing its deposit, that deed created a security interest *only* in Phase 1 property.[15] LGI already owns Phase 1 property.

Moreover, the PSA provided that that ECM's obligation to return the deposit to LGI, "*to the extent required to do so under this Agreement*, shall be secured by a mortgage lien against the Land in the form of the Deed of Trust attached hereto." CP at 93 (emphasis added). Thus, ECM was obligated to return the Phase 2 deposit if it breached the PSA; however, the obligation with regard to the Phase 2 deposit was not secured with the Phase 2 property. Based on the terms of the PSA and the property that the LGI Deed secured, loss of the Phase 2 deposit is a risk that LGI

---

[15] While LGI argued during proceedings below that its claim for the Phase 2 deposit was secured by a deed of trust "recorded against the estate property," LGI did not argue it is a secured creditor on the Phase 2 property on appeal. CP at 84.

21

assumed when it agreed to release the entire deposit amount.[16]   Thus, LGI is functionally an

unsecured creditor and must be treated as such.

> c.    Superior court erred in allowing LGI's claim to be paid ahead of CLS's
> claim

Because LGI is an unsecured creditor, the receivership statute provides that LGI falls below

CLS in terms of distribution priorities.  RCW 7.60.230.  LGI argues in the alternative that the

Receiver's obligation to return the Phase 2 deposit "constitutes an administrative expense of the

Receivership that takes priority over CLS's secured claim under RCW 7.60.230(1)(b)."  Br. of

Resp't at 31.  LGI cites to bankruptcy principles to support its contention that a depositor's earnest

money, and the obligation to return earnest money based on a breach of contract, is an

administrative expense.  We disagree.

Expenses incurred during the administration of a receivership estate "have priority over the

secured claim of any creditor obtaining or consenting to the appointment of the receiver."  RCW

7.60.230(1)(b).  RCW 7.60.130(2) provides in part:

> Any obligation or liability incurred by a general receiver on account of the
> receiver's *assumption* of an executory contract . . . shall be treated as *an expense of
> the receivership*.  A general receiver's *rejection* of an executory contract . . . shall
> be treated as *a breach* of the contract . . . occurring immediately prior to the
> receiver's appointment.

(Emphasis added.)

Here, under the plain language of Washington's receivership statute, only obligations

arising from a receiver's *assumption* of an executory contract constitute an "expense."  There is

---

[16] This is a risk LGI could have minimized through a security interest in the form of a deed of
trust on the Phase 2 property.

nothing in the statute regarding "expenses" arising from a receiver's *rejection* of an executory contract—only that a rejection constitutes a breach of contract. Where the legislature has used certain statutory language in one instance, but not in another, evidences a different legislative intent. *King County Water Dist. No. 20*, 194 Wn.2d at 855. Therefore, while the Receiver has an obligation to LGI that arose from its rejection of the PSA, that obligation derives from principles of contract law and is specific the PSA's contractual terms—it is not a statutory "expense" under the receivership statute. Thus, LGI's claim remains an unsecured claim that falls lower in priority than CLS's secured claim.

Because LGI's claim is not an "expense" of the receivership estate and because the claim amounts to an unsecured claim, the superior court erred when it concluded that "[p]rior to any distributions of Estate property, the Receiver shall refund LGI's $450,000 Phase 2 earnest money deposit to LGI." CP at 740. Accordingly, we reverse the superior court and hold that LGI is not entitled to a distribution in advance of CLS's claim.

## ATTORNEY FEES ON APPEAL

CLS requests an award of attorney fees on appeal pursuant to RAP 18.1, RCW 4.84.185, and the CLS Deed. LGI argues that neither party is entitled to attorney fees on appeal and that CLS's claim for attorney fees is unsupported by any legal authority.

RAP 18.1(a) provides that a party may request reasonable attorney fees or expenses so long as "applicable law grants to a party the right to recover." Parties must devote a separate section of their brief to requests for attorney fees on appeal and "[a]rgument and citation to authority are required under the rule to advise the court of the appropriate grounds" for any award. *Stiles v.*

*Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012); RAP 18.1(b).

RCW 4.84.185 allows the prevailing party in a civil action to recover reasonable expenses "upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause." Here, there was no finding by the superior court, nor argument by the parties, that this matter was frivolous or advanced without reasonable cause. Moreover, CLS filed this appeal, not LGI. Thus, we hold that this was not a frivolous appeal by LGI and decline to award attorney fees on appeal pursuant to RCW 4.84.185.

"'A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party substantially prevails.'" *Judges of Benton and Franklin Counties: Burrowes v. Killian*, 195 Wn.2d 350, 363, 459 P.3d 1082 (2020) (quoting *In re Appointment of Special Deputy Prosecuting Att'y*, 193 Wn.2d 777, 791, 446 P.3d 160 (2019)). CLS references the CLS Deed as providing authority for the award of attorney fees. However, CLS fails to specify what provision in the CLS Deed allows for an award of fees as against LGI, who is not a party to the CLS Deed. The CLS Deed includes a section titled "Payment of Costs, Expenses, and Attorneys' Fees," which discusses the allowance of fees and costs as it relates to obligations existing between CLS and ECM. ECM is not a party to this appeal. Thus, the CLS Deed does not provide authority for the award of fees against LGI to CLS. We reject CLS's request for attorney fees on appeal.

## CONCLUSION

We hold that the superior court did not err when it determined that LGI's deposit was not part of the receivership estate. However, the superior court erred when it ordered that LGI is entitled to return of its deposit prior to any other receivership estate distributions. Therefore, we affirm the superior court's ruling that LGI's deposit was not part of the receivership estate, but we reverse superior court ruling that LGI receive $450,000 in advance of CLS's claim.

Lee, J.

We concur:

Cruser, C.J.

Price, J.